UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,
THE STATE OF FLORIDA,
*ex rel.* WILLIARD REVELS,

                    Plaintiffs,

v.                                          Case No. 3:19-CV-834-J-TJC-LLL

PUTNAM COMMUNITY MEDICAL
CENTER OF NORTH FLORIDA, LLC,

                    Defendant.
_____/

**UNITED STATES' AMENDED[1] MOTION TO INTERVENE FOR PURPOSES OF SETTLEMENT AND MOTION TO DISMISS UNDER 31 U.S.C. § 3730(c)(2)(A) AND (B) AND SUPPORTING MEMORANDUM**

The United States[2] hereby files this combined motion to intervene for purposes of settlement and to seek dismissal of the Second Amended Complaint under 31 U.S.C. § 3730(c)(2)(A) and (B) and Fla. Stat. §§ 68.084(2)(a) and (b). The United States, as the real party in interest, has reached an agreement to settle with the Defendant Putnam Community Medical Center of North Florida, LLC ("Defendant" or "PCMC") to resolve claims brought by Relator Willard Revels (Relator) on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729–3733 (FCA) and on behalf of the State of Florida under the Florida False

_____

[1] Amended only to correct citation of *United States v. Republic of Honduras*, 21 F.4th 1353 (11th Cir. Dec. 30, 2021). *See* page 16 and FN 8.

[2] The State of Florida agrees and joins in the proposed settlement and motion. For ease of reference, the arguments include both the United States and the State of Florida.

1

Claims Act, Fla. Stat. § 68.083 (FFCA). The proposed settlement will allow the United States a fair, reasonable and adequate recovery, the certainty of settlement under 31 U.S.C.§ 3730(c)(2)(B) and Fla. Stat. §§ 68.084(2)(b), and it guarantees Relator a share as set forth in § 3730(d)(2). *See United States v. Everglades College, Inc.,* 855 F.3d 1271 (11th Cir. 2017) (finding that the United States, the real party in interest, may resolve a non-intervened FCA action without a relator's consent in accordance with 31 U.S.C. § 3730(c)(2)(B)). Relator opposes and declines to join in the Settlement Agreement.  The United States respectfully requests that this Court grant this motion, approve the settlement, and dismiss this case pursuant to the terms of the Settlement Agreement, discussed in detail below and attached as Exhibit A.[3]

## I.      Procedural and Factual Background

On July 16, 2019, Relator filed a *qui tam* Complaint under the FCA and FFCA. (Dkt. 1). Relator alleged, among other things, that Defendants violated the FCA and the FFCA by submitting false claims for diagnostic sleep testing services without the required level of physician supervision, rendering all such claims ineligible for coverage, and by failing to self-report and/or timely reimburse these overpayments from various federal healthcare programs as well as Medicaid.  *Id.* at ¶ ¶ 12-18. These sleep-related services took place at a now-closed sleep center which was located and operated within the Putnam Community Medical Center (PCMC),

---

[3] The attached Settlement Agreement is unsigned pending the approval of the Court. Upon approval and dismissal, the parties are prepared to promptly file the joint notice of dismissal attached as Exhibit B and initiate the process of fully executing the Settlement Agreement.

a small 99-bed, rural hospital. *Id.* at ¶ 6.  Relator originally named multiple defendants, including PCMC, HCA Healthcare, an affiliate of PCMC, Lifepoint Health, Inc., and Parallon Business Solutions, Inc. *Id.*

The case was investigated under seal and the government declined to intervene. (Dkt. 11). The Relator proceeded to litigate the case on behalf of the United States and filed his First Amended Complaint naming only PCMC as the Defendant. (Dkt. 16). Defendant filed a motion to dismiss (Dkt. 25) and moved to stay discovery (Dkt. 28), which the Court granted. (Dkt. 43). The Court held a hearing on the motion to dismiss. (Dkts. 51, 56). As part of the order granting the motion to dismiss, Relator was permitted to take three non-party depositions. (Dkt. 57).

The Court also cautioned Relator that his allegations of false or fraudulent claims "are subject to the heightened pleading standard of Rule 9(b) and must 'state with particularity the circumstances constituting fraud or mistake,'" and that his "second amended complaint should be explicit as to materiality and causality, whether he is pleading an implied or explicit certification theory, and which claims relate to which counts." *Id.* at 2-3. Specifically, the Relator was to consider whether the "downstream and pre- and post-employment claims and claims from other departments are viable." *Id.* at 3. Relator ultimately took one deposition and thereafter filed his Second Amended Complaint (SAC). (Dkts. 59, 60).

Defendant filed another motion to dismiss the SAC (Dkt. 74), which was granted in part and denied in part. (Dkt. 81). The Court's order narrowed the case by

dismissing with prejudice Relator's allegations as to any downstream claims, claims relating to EKG/PFT tests, and pre- and post-employment claims because they failed to meet the "heightened" pleading standards of Rule 9(b).[4]  *Id.* at 14-16, 20. During the motion to dismiss proceedings, the United States sought leave to file two Statements of Interest to weigh in on matters of significance to the United States, largely related to Local Coverage Determinations (LCD). (Dkts. 37, 44, 80).

With the claims legally narrowed, the amount of the FCA claims at issue became finite and limited. Thus, the parties mediated the case on April 27, 2023. The United States voluntarily participated in the mediation as the real party in interest. The parties reached an impasse. Based on the parties' exchanges during mediation, the United States invited counsel for the defendant to make an offer directly to counsel for the United States that would resolve all claims in the case (exclusive of the Relator's attorneys' fees and costs), resulting in the proposed settlement agreement. Throughout the mediation process and after, counsel for the United States invited Relator to join the settlement on multiple occasions, but he declined.

The day before the mediation, Relator filed a motion asking the Court to reconsider the Court's prior Order dismissing the downstream claim allegations (Dkt. 93), and later amended his motion. (Dkt. 95). Defendant filed a motion to extend the

---

[4] Relator has asked the Court to reconsider, or clarify, its ruling on the downstream claims (Dkts. 93, 95). The Court specifically noted with respect to these claims that Relator "neither worked at the downstream providers, nor has he provided a claim demonstrably paid by the federal government to a downstream provider based on PCMC's certifications." (Dkt. 81 at 15, 20). Relator's motion incorrectly argues that these allegations are subject only to the Rule 8 pleading standards, not to the heightened standards under Rule 9(b).

time to respond (Dkt. 94) and Relator's motion is still pending. The Court ordered Defendant to respond by June 9, 2023 (Dkt. 97).  Given the proposed Settlement Agreement and the filing of this motion, Defendant intends to promptly move to stay the proceedings, except to the extent necessary to resolve the issues outlined herein, a position with which the United States concurs.

A) <u>The Terms of the Proposed Settlement Agreement</u>

The Settlement Agreement requires the Defendant to pay the sum of one million dollars ($1,000,000) to the United States in exchange for a release of all claims described in the "Covered Conduct" paragraph of the agreement and upon the Court's approval of the settlement and dismissal of this case in its entirety under 31 U.S.C. § 3730(c)(2)(A) and (B) and Fla. Stat. §§ 68.084(2)(a) and (b). Exh. A at ¶ 1, 7. The Covered Conduct includes claims for diagnostic sleep testing services conducted at PCMC's sleep center that the United States and the State of Florida allege were not provided with adequate physician supervision under 42 C.F.R. 410.32, nor in conformance with LCDs L29949 and L36839, during the period from December 2013 through February 2019, when the Relator worked for PCMC.[5] *Id.* at ¶ D.  The proposed Settlement Agreement, rejected by Relator, allows for a 25% share for Relator under 31 U.S.C. § 3730(d)(2).[6]  *Id.* at ¶ 2. Defendant acknowledges

---

[5] The Settlement Agreement explicitly states that it is not an admission of liability by PCMC, nor a concession by the United States or the State of Florida that their claims are not well founded. Exh. A at 2, ¶E.

[6] The United States invited the Relator to join in the Settlement Agreement and agreed to pay a 30% relator share, exclusive of attorney's fees and costs (offering 25% if Relator objected) pursuant to § 3730(d)(2). Relator objects to it incorrectly arguing that the

its obligation to pay a reasonable amount of Relator's expenses, costs and attorney's fees under 31 U.S.C. § 3730(d)(1), as determined by the Court or otherwise by agreement. *Id.* at ¶ ¶ 3, 16.

## II.    Memorandum of Law

Under the FCA, Congress authorized private parties to bring claims on behalf of the government, yet the United States remains the real party in interest. *See Everglades College, Inc.*, 855 F. 3d at 1288.  "The relator instead brings the *qui tam* claim as the assignee of the United States' claim, with the government being the real party in interest to FCA actions." *Id.* The FCA specifically addresses situations where a dispute arises between the United States and relator over the perceived fairness of a settlement advanced by the government and spells out a relator's statutory rights in such a context:

> The Government may settle the action with the defendant *notwithstanding the objections of the person initiating the action* if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. Upon a showing of good cause, such hearing may be held in camera.

---

government cannot "unilaterally settle the case (or dismiss it) once it has declined to intervene" and that the settlement is "inadequate because, *inter alia*, it fails to factor into consideration: (1) the reasonable value of the [downstream] claims or the Act's mandatory civil penalty provisions; (2) the egregiousness of defendant's fraudulent, dissembling, and retaliatory behaviors; and (3) defendant's unwillingness to consider a corporate integrity agreement [CIA] to protect the health, safety and welfare of the patients of the Cardiopulmonary Department." While the United States disagrees with many of Relator's characterizations as more fully detailed herein, the government did not seek to impose a CIA as part of the Settlement Agreement because it does not find it necessary as the PCMC closed the sleep center in March 2019.

31 U.S.C. § 3730(c)(2)(B) (emphasis supplied). This provision creates a procedure where the relator has objected to a settlement reached by the government, as he has done here, for a fairness hearing. *See Everglades College,* 855 F.3d at 1271 (discussion of parameters of fairness of settlement when relator objects).

    A) Applicability of *United States v. Everglades College.*

        Like in *Everglades College*, this case presents a spirited relator who objects to the "fairness, adequacy, and reasonableness" of the settlement reached by the United States. The stage of the proceedings, however, differs from the one in *Everglades College*, and is more akin to the circumstances in *United States, ex rel. Horsley v. Comfort Care Home Health, LLC*, No. 2:19-cv-00229, 2020 WL 4002005 (N.D. Al. 2020) (approving settlement and dismissal over relator's objection after government and defendant agreed to settlement near the end of government's investigation); *see also United States, ex rel. Balko v. Senior Home Care*, No. 8:13-cv-03072, 2017 WL 3268200 (M.D. Fla. 2017) (relator initially agreed to settlement before intervention but later reneged and objected when defendant and United States reached a settlement). Here, the United States does not need to wait for a jury verdict and appeal like it did in *Everglades College*. The United States submits that settlement at this earlier stage of the case is warranted both because the universe of alleged false claims is relatively small, both in number and amount, and to conserve the resources of the United States, including the anticipated need for them as this case proceeds. *See Comfort Care*, 2020 WL 4002005 (finding that the government' determination to settle the "before

incurring the significant costs of protracted litigation that would cause it to expend valuable resources" was reasonable).

*Everglades College* involved two relators' claims that a for-profit university had defrauded the United States through various practices that violated certifications required by the Department of Education in administering its federal student loan programs. *Everglades College, Inc.*, 855 F. 3d at 1283. The relators (both formerly employed as admissions officers at the university) alleged that Everglades had illegally incentivized admissions officers through payments that rewarded success in securing student enrollments. *Id*. The United States declined to intervene, and the relators litigated the case to a jury verdict that found the defendant had submitted only two false claims (instead of the 230,000 alleged by the relators) and awarded the minimum statutory penalties for the two claims. *Id*. at 1283-84.  The disappointed relators appealed to the Eleventh Circuit and, while the case was on appeal, the United States undertook settlement negotiations with the defendant.  *Id*. at 1284. The United States and defendants reached an agreement under which defendants would pay $335,000 to the United States in satisfaction of the claims alleged by the relators. *Id*. When the relators objected to the proposed settlement, the government sought an indicative ruling from the district court (as the case was on appeal) that would permit intervention in the case in order to settle, and further that the settlement was fair, adequate and reasonable under 31 U.S.C. § 3730(c)(2)(B). *Id*.  The Eleventh Circuit remanded the case to the district court for a fairness hearing, which found that

intervention was proper, denied the relators' objections, and found the settlement to be fair. *Id.*

The relators again appealed, contending that the United States had no right to intervene so late in the proceedings, challenged the underlying fairness of the settlement, and the district court's denial of an evidentiary hearing and discovery on fairness. *Id.* at 1285. The Eleventh Circuit affirmed and held that the government need not satisfy the False Claims Act's "good cause" standard in order to settle a relator's claims, affirmed the district court's finding that the settlement met the FCA's fairness standard, and found no error in the district court's refusal to hold an evidentiary hearing on fairness. *Id.*

The Eleventh Circuit analyzed at length the standard for evaluating the fairness of a settlement when a relator objects. The *Everglades College* relators had urged the Court "to review the proposed FCA settlement under the same rubric used to evaluate proposed class settlement between private parties under Fed. R. Civ. P. 23." *Id.* at 1287. The Court declined this request, pointing out the essential differences between the class action and FCA contexts, observing:

> [A] *qui tam* FCA suit materially differs from class-action litigation between private parties for two reasons. First, unlike members of a plaintiff class, a *qui tam* relator has suffered no invasion of his own rights. The relator instead brings the *qui tam* claim *as the assignee of the United States' claim, with the government being the real party in interest to FCA actions.* So, unlike with class-action settlements, when the government settles a *qui tam* case, it is agreeing to compromise with respect to its own injuries only, not those of the relator or other absent parties.

Second, also unlike with private plaintiffs, *the government's interests are not confined to maximizing recovery against the defendant. The United States may want to consider whether the maximum recovery is proportional to the seriousness of the misconduct. It may also wish to consider public policy consequences or political ramifications. Moreover, it could conclude that limited prosecutorial resources are not worth spending on continued monitoring of the case, which it often must do even when the relator is proceeding with the action.* These considerations are entirely absent when evaluating a proposed class settlement between private parties. Thus, we conclude that the Rule 23 standard for class settlements between private parties is not the proper framework for evaluating FCA settlements between the government and the defendant.

*Id.* at 1287-88 (citations omitted) (emphasis added).

Further, under § 3730(c)(2)(A) and (B),[7] which address the circumstances in which the government may both settle and dismiss a *qui tam* case, the Eleventh Circuit noted that:

…neither subsection conditions the government's rights on formally intervening in the case. Instead, they provide in unequivocal terms that "the Government may settle [or dismiss] the action with the defendant notwithstanding the objections of the person initiating the action." § 3730(c) (2)(A), (B). In the context of dismissals, the court need only "provide[ ] the [relator] with an opportunity for a hearing," § 3730(c)(2)(A); and with settlements, the court must "determine[ ], after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." § 3730(c)(2)(B).

*Id.* at 1286.

---

[7] Section 3720(c)(2)(A) governing *dismissal* states that the "Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." By contrast, § 3730(c)(2)(B) addresses *settlement* and states that the "Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances."

When reviewing the settlement and dismissal of an FCA case, "some limited deference is still warranted" for the government's decision, and the Court "must afford some degree of respect to the government's settlement rationale." *Id.* at 1288. "At the same time, given the FCA's mandate that we review settlements for fairness, we cannot just rubber stamp the government's justifications." *Id.* at 1288-89.  The Court looks both to the "reasonableness of the rationale offered by the government as well as the potentially prejudicial effect on the relator…[and] asks whether the government has advanced a reasonable basis for concluding the settlement is in the best interests of the United States, and whether the settlement unfairly reduces the relator's potential *qui tam* recovery." *Id.* at 1289.

Here, the Settlement Agreement is in the best interests of the United States and there is a reasonable basis for settlement, which does not unfairly reduce the Relator's recovery (especially if there was a defense verdict) and guarantees a statutory payment of Relator's share.  As such and for the reasons set forth herein, the United States requests that the Court approve the proposed Settlement Agreement as fair, adequate and reasonable under § 3730(c)(2)(B).

B) <u>Brief overview of the government's investigation.</u>

In its investigation of the Covered Conduct, the United States reviewed the claims data, conducted interviews, and addressed the relevant authorities covering sleep centers and sleep services. First, such services require general physician supervision under 42 C.F.R. § 410.32, which must be "furnished under the physician's overall direction and control, but the physicians' presence is not required

11

during the performance….” and training of “nonphysician personnel who actually perform the diagnostic procedure and maintenance of the necessary equipment and supplies are the continuing responsibility of the physician.” Second, in 2017, an LCD (L36839) was developed (in part due to related issues with sleep centers) that specifically applied to sleep studies and required, among others, the presence of a sleep-certified physician. The government discovered that Defendant instituted a “bill hold” on its claims during the grace period allowed for compliance with this specific LCD, and it ultimately did not submit those claims because it closed the sleep center, leaving a smaller set of claims submitted by Defendant (and its predecessor) at issue for settlement purposes after the Court dismissed the other claims alleged in the SAC. (Dkt. 81).

C) The proposed settlement is fair, adequate, and reasonable, in the best interest of the United States, and not unfair to Relator.

The United States and Defendant have arrived at a proposed settlement which the United States submits is a fair, reasonable and just settlement of the case under § 3730(c)(2)(B). *See Everglades College, Inc.*, 855 F. 3d at 1279. In this case, and without waiving any privilege, the United States has carefully considered a number of factors in reaching the proposed settlement, and has done so after the parties mediated this case to an impasse. Notably, the United States has considered the potential losses to the government from the alleged conduct and the proportionality of the proposed settlement, including the provability of the elements of Relator's

claims from an evidentiary point of view, and the government's resources required to be invested in the continued litigation.

The proposed settlement amount of $1,000,000 represents a large recovery (both in real and substantive terms) for the alleged false claims at issue in this case. Other courts have approved much smaller settlements. *See Everglades College*, 855 F. 3d at 1279 (approval of $335,000 settlement that relators valued at $2.53 billion); *Comfort Care,* 2020 WL 4002005 at *4, n.3 (settlement of nearly $705,000, which relator valued at over $56 million); *Senior Home Care,* 2017 WL 3268200 at *3 (approving $325,000 settlement where relator valued the case at $20 million). Moreover, Defendant has provided the claims data to the parties in this case; the settlement amount is more than twice the total damages at issue. Such a settlement is fair, adequate and reasonable.  The United States submits that the important government interest in maximizing a recovery against the Defendant and ensuring that it is proportional to the seriousness of the misconduct has been accomplished with the proposed settlement amount. And significantly, the settlement provides certainty over any contingent verdict or risk of no recovery. *See Everglades College*, 855 F.3d at 1289 (valuing "certainty of settlement"); *Senior Home Care*, 2017 WL 3268200 at *3 (same).

As recognized in *Everglades College*, there are additional opportunity costs that the United States must weigh and consider; namely, whether "the limited prosecutorial resources are [ ] worth spending on continued monitoring of the case, which it often must do even when the relator is proceeding with the action."

13

*Everglades College,* 855 F.3d at 1287. In this case, the United States Attorney's Office for the Middle District of Florida and the Department of Justice have filed two Statements of Interest in this litigation to date and believe that further monitoring would expend additional government resources. This office maintains multiple, open *qui tam* and healthcare fraud investigations and must allocate resources and plan accordingly, without directing disproportionate resources to a single case.

Importantly, the government also contends that the proposed settlement does not unfairly reduce the Relator's potential *qui tam* recovery, particularly given that the certainty of a settlement *guarantees* he will receive a monetary recovery.  That is, if the case were to proceed to trial, there is a real risk that Relator would recover nothing.

Relator's theories of liability have both legal and factual flaws which have led him to overvalue his case. Relator fails to take into account any risk of litigation, which could be substantial. A key component of his valuation is Relator's recently filed motion to reconsider the downstream claims—claims that were previously dismissed by this Court with prejudice after two attempts to amend his complaint. Further, the timing of the motion, on the eve of a long-scheduled mediation, suggests an attempt to increase his claim damages beyond the limited number of claims at issue. As noted in the Court's Order granting the dismissal of the downstream claims, the Relator failed to allege fraud with particularity as to these claims in part because he did not work for those providers nor did he allege any theory of implied

or express certification in terms of falsity. His motion to reconsider did not, and cannot, address these infirmities.

An important and vital consideration for the government is the certainty of settlement over trial and/or the development of adverse law in this area. In *Everglades College,* the relators made a similar argument, but the Eleventh Circuit sided with the government and its interest in "preferring the certainty of a settlement to the uncertainty of an appeal." *Id.* at 1289. The settlement provides certainty and advances a fair and reasonable basis to resolve the claims that the Relator has asserted, as well as allowing Relator a statutory share in the recovery while avoiding any continued expenditure of government resources or the development of adverse case law.

D) <u>Dismissal of the case in its entirety, including any existing unreleased claims is appropriate</u>.

Under the FCA, the United States may "dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing of the motion." 31 U.S.C. § 3730(c)(2)(A). Citing to *United States ex rel., Sequoia Orange Co. v Barid-Neece Packing Corp.*, 151 F.3d 1139 (9th Cir. 1998), the Eleventh Circuit, in dicta, acknowledged that "[w]hen the government seeks to dismiss the FCA action [as opposed to settling], the statute does not prescribe a judicial determination of reasonableness . . . ." *Everglades Coll., Inc.*, 855 F.3d at 1288; *cf. Swift v. United States,* 318 F.3d 250, 252 (D.C. Cir. 2003)

(unfettered right of the United States to dismiss case); *see also United States v. Republic of Honduras (ROH)*, 26 F.4th 1252 (11th Cir. March 9, 2022) *rehearing en banc granted,*[8] *vacating opinion at United States v. ROH.*, 21 F.4th 1353 (11th Cir. Dec. 30, 2021) (affirming district court case, *United States v ROH*, 2020 WL 496509 at *5 (S.D. Ala. Jan. 30, 2020), that relied on language from *Everglades College* in holding that the *Swift* standard applied to § 3730(c)(2)(A) dismissals); *Comfort Care*, 2020 WL 4002005 at *6 (relying on the same); *but see United States ex rel. Graves v. Internet Corp. for Assigned Names & Numbers, Inc.*, 398 F. Supp. 3d 1307, 1310-11 (N.D. Ga. 2019) (suggesting, but not deciding, that the relator's right to a hearing implicates the less deferential rational basis standard in *Sequoia*).

The government submits that the Court need not decide whether the *Swift* or *Sequoia Orange* standard applies in this case because here, the government meets the even the stricter *Sequoia Orange* standard and its requested dismissal has a rational relation to accepted governmental purposes. Thus, assuming *arguendo* that the stricter *Sequoia* standard applies to Court's review of the proposed settlement here, the

---

[8] Oral argument was held before the Eleventh Circuit *en banc* on June 21, 2022. On June 24, 2022, the Court entered an order holding *U.S. v. ROH* in abeyance pending the resolution of *Polansky v. Executive Health Resources Inc.*, 17 F.4th 376 (3rd Cir. 2021), *cert. granted*, Case. No. 21-1052 (June 21, 2021) (Transcript and recording of Supreme Court oral argument on Dec. 2, 2022, available at www.oyez.org/cases/2022/21-1052). *See ROH*, Dkt. 67, No. 20-10604. Although both cases address the standard for the government's motion to dismiss under 31 U.S.C. § 3730(c)(2)(A), the instant case is different because it concerns the provisions for approving a proposed settlement over a relator's objection (under 31 U.S.C. § 3730(c)(2)(B)) which are not at issue in *ROH* or *Polansky*. Only when the proposed settlement is approved does the United States (and Defendant) move to dismiss the case and the SAC in its entirety, for the reasons discussed *infra*, including any claims that remain after Court's order dismissing Relator's other claims with prejudice. *See* Dkt. 81.

dismissal of this case and any unreleased claims against Defendant has multiple, independent, and reasonable purposes that are rationally related to the request for dismissal.[9] *See Comfort Care*, 2020 WL 4002005 at *6 (citing three government purposes: "(1) the government's desire to conserve resources; (2) the government's aim to avoid the risk of the creation of adverse case law; and (3) the reality that resolving Relator's *qui tam* action is an express condition of the settlement agreement between the government and Defendants.").

As discussed *supra*, the continued expenditure of government resources outweighs any potential recovery the government could secure through Relator's continued litigation efforts. *See e.g., Sequoia*, 151 F.3d at 1146 (dismissal granted at least in part because of costs borne by government even when relator pursues action). Resolving the case at this juncture avoids the risk of creating adverse law. *See Everglades College*, 855 F.3d at 1289 ("And most importantly for the United States here, the government must be wary of the precedential impact of a potentially adverse appellate decision. If the Eleventh Circuit affirmed the district court's restrictive reading of the FCA here, the government would be limited in its enforcement efforts all around the Circuit."). Further, in *Comfort Care,* 2020 WL 4002005 at *6, the court, citing to *Everglades College*, found that the Eleventh Circuit

---

[9] Under the *Sequoia* framework, once the government has established valid purposes rationally related to dismissal, as it has done here, the burden shifts to the nonmoving party (in this case, Relator) to show that the dismissal is "fraudulent, arbitrary and capricious, or illegal." *See Comfort Care*, 2020 WL 4002005 at *7. Relator's objections, noted *supra* in n. 5, fail entirely to support any possible legal contention that dismissal of the unreleased claims are "fraudulent, arbitrary and capricious or illegal" in any way. *Id.*

has "squarely held that the first two factors constitute valid governmental purposes that are rationally related to the dismissal of unreleased claims." *See also Graves*, 398 F. Supp.3d at 1311 (finding there is a rational relationship between the government's desire to conserve resources and dismissal).

Additionally, dismissal of the unreleased claims is a valid purpose because resolving the *qui tam* action is a condition of Defendant's willingness to pay the settlement amount and a material term of the proposed settlement. That is, but for the government's agreement to seek dismissal, Defendant would not have settled. Continued and protracted litigation not only results in the government incurring more costs and expending valuable resources, but it would adversely affect Defendant's ability and willingness to settle.  And even though it is not likely there are any other claims left in this case besides the Covered Conduct after the Court's order,[10] the government moves to dismiss this action in its entirety to effectuate the Settlement Agreement. *See* Exh A. at ¶ ¶1, 7.

Accordingly, to the extent that any unreleased claims exist in the SAC, the United States seeks to dismiss such unreleased or remaining claims with prejudice to Relator, who has been notified of the settlement and the filing of this motion, and has informed the undersigned of his objection, under 31 U.S.C. § 3730(c)(2)(A). The

---

[10] This Court granted Defendant's motion to dismiss, with prejudice, as to the other claims it determined were alleged by Relator in the SAC—claims relating to diagnostic tests performed in other departments of PCMC (e.g., electrocardiograms and pulmonary function tests), claims submitted outside the scope of Relator's employment (e.g., January 2009 to November 2013 and March 2019 to present) and any downstream claims. (Dkt. 81).

government submits that it is not in the interests of justice or judicial economy to require continued litigation of any of the issues arising from the SAC, and it is in the government's best interest to settle this case now when it has obtained a fair, reasonable, and adequate settlement.

E) <u>Relator is entitled to be heard as whether the proposed settlement is fair, adequate and reasonable, but he not entitled to further discovery.</u>

The government submits that the Relator is not entitled to a full-blown evidentiary hearing or a mini-trial on the merits of the claims at issue in this case. Just as in *Everglades College*, the United States has agreed to settle this case "precisely to avoid that fight." 855 F.3d at 1290.  While a relator is entitled to address the fairness and adequacy of the proposed settlement, he is not entitled to any further discovery or "a right to unearth new evidence at the hearing to attack the proposed settlement. Instead, the statutory hearing provision 'serves a more limited purpose of forcing the government to provide some reasoning behind its decision to settle the case and giving the plaintiff-relators an opportunity to direct the court's attention to facts or allegations that would suggest that the settlement' was unreasonable." *Everglades College,* 855 F. 3d at 1290, *citing United States ex rel Schweizer v. Oce N. Am., Inc.*, 956 F. Supp.2d 1, 11 (D.D.C. 2013); *see also Horsley*, 2020 WL 4002005, at *5 ("The Eleventh Circuit has construed the statutory right to a hearing not to require an actual hearing, but to 'include no more than a right to highlight existing evidence and make arguments based on that evidence, that the proposed settlement in unreasonable or improper,'" *citing Everglades College*, 855 F.3d at 1290, *also citing*

*Martin v. United States Dep't of Agric.*, 2019 WL 166554, at *3 (S.D. Ga. Jan. 10, 2019) ("[T]he Court finds that it is unnecessary to hold a hearing in this case before granting the Government's motion to dismiss.")).

Moreover, citing to § 3730(c)(2)(B), the Eleventh Circuit noted that "[t]he FCA does not expressly entitle the objecting *qui tam* relator to discovery at all." *Everglades College,* 855 F. 3d. at 1291.  Only in cases where the relator has met its burden to "come forward with a colorable and non-speculative claim that the government's settlement rationale is improper and that further disclosures are needed" may there be "limited discovery 'to effectuate the goals of allowing [him] meaningful participation in the fairness hearing without unduly burdening the United States or Defendants or causing unnecessary delay.'" *Id*. at 1291-92, n.8 (denying relators' discovery into, among others, "the government's evaluation of Relators' likelihood of success on appeal, the reasons the United States filed Statements of Interest...") "[A]nd absent such a showing the district court ordinarily will not afford an evidentiary hearing." *Id*. at 1290. To do otherwise, the Eleventh Circuit has agreed that it is "generally antithetical to the government's prerogative to end a *qui tam* case brought in its own name." *Id*.  at 1291.

### III.   Conclusion

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion, unopposed by Defendant, to dismiss the case and approve the settlement, over Relator's objection, finding it to be fair, adequate and reasonable, and rationally related to valid governmental purposes.

Dated: June 6, 2023                  Respectfully submitted,

                                     ROGER B. HANDBERG
                                     United States Attorney


                                     By:  */ s/ Kelley C. Howard-Allen*
                                     Kelley C. Howard-Allen
                                     Assistant United States Attorney
                                     Florida Bar No.: 0085464
                                     Office of the United States Attorney
                                     For the Middle District of Florida
                                     400 N. Tampa St., Suite 3200
                                     Tampa, FL 33602
                                     Tel: (813) 274 6000
                                     Fax: (813) 274 6200
                                     Email: Kelley.Howard@usdoj.gov


## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned certifies that counsel conferred via email with Defendant's and Relator's counsel regarding this motion and the relief requested herein. Defendant (and the State of Florida) concurs in the motion and Relator opposes this motion and the relief requested herein.

Dated: June 6, 2023


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 6, 2023, I caused a true and correct copy of the foregoing to be filed using the Court's CM/ECF filing system, which will send an electronic notice of filing to all counsel of record.

                                     /s/Kelley C. Howard-Allen
                                     Assistant United States Attorney

# EXHIBIT A

<u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"), the Defense Health Agency ("DHA"), acting on behalf of the TRICARE Program; (collectively, the "United States"); the State of Florida, acting through the Florida Office of The Attorney General ("State of Florida"); and Putnam Community Medical Center of North Florida, LLC, (hereafter collectively referred to as "the Parties"), through their authorized representatives.

<u>RECITALS</u>

A.      Putnam Community Medical Center of North Florida, LLC is a Florida limited liability company that owns and operates Putnam Community Medical Center, a 99-bed acute care facility ("Hospital"). The Hospital was previously operated by Putnam Community Medical Center, LLC (now dissolved), which was owned by LifePoint Holdings 2, LLC ("LH2").

B.      On July 16, 2019, Relator Willard Revels filed a *qui tam* action in the United States District Court for the Middle District of Florida captioned *United States, State of Florida ex rel. Willard Revels v. Putnam Community Medical Center of North Florida, LLC, et al.,* Case No. 3:19-cv-834-J-32JRK, pursuant to the False Claims Act, 31 U.S.C. § 3730(b) ("Civil Action"). Relator specifically alleged violations of 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), (a)(1)(G) and Fla. Stat. §§ 68.083(2)(a), (2)(b), and (2)(g). The United States and the State of Florida declined to intervene in the Civil Action on October 30, 2020. Relator filed a First Amended Complaint on January 22, 2021, and a Second Amended Complaint on February 16, 2022, naming only Putnam Community Medical Center of North Florida, LLC as a defendant. The substantive causes of action remained the same. The Court granted Defendant's motion to dismiss in part, leaving only Relator's allegations that from December 2013 to February 2019,

Putnam Community Medical Center of North Florida, LLC and Putnam Community Medical Center, LLC submitted false claims to Medicare, Medicaid, Tricare and other federal reimbursement programs in connection with a now-closed sleep center it purportedly operated with inadequate physician supervision under 42 C.F.R. 410.32 and failure to comply with two local coverage determinations ("LCD"), namely, LCDs L29949 and L36839. All other claims alleged by Relator were dismissed with prejudice by the Court on October 26, 2022. (Dkt. 81).

C.   The United States and the State of Florida contend that Putnam Community Medical Center of North Florida, LLC and Putnam Community Medical Center, LLC submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare"); the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"); and the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE").

D.   The United States and the State of Florida contend that they have certain civil claims against Putnam Community Medical Center of North Florida, LLC, including its predecessors and affiliates, arising from claims for diagnostic sleep testing services conducted at its now-closed sleep center, which the United States and the State of Florida allege were not provided with adequate physician supervision and in conformance with LCDs L29949 and L36839 during the period from December 2013 through February 2019.  That conduct is referred to below as the "Covered Conduct." [1]

E.   This Settlement Agreement is neither an admission of liability by Putnam Community Medical Center of North Florida, LLC, nor a concession by the United States o the State of Florida that its claims are not well founded.

---

[1]The Covered Conduct represents the only claims from Relator's Second Amended Complaint that survived the Court's Order granting the dismissal with prejudice of the Relator's other claims which specifically include among other things the downstream claims that are the subject of Relator's pending motion for reconsideration. (Dkt. 95).

F.    Relator claims entitlement under 31 U.S.C. § 3730(d) and 68.085(2), Fla. Stat. to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees, and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.    Upon the Court's approval of the Settlement Agreement as "fair, adequate and reasonable" under 31 U.S.C. 3730(c)(2)(B) and Fla. Stat. § 68.084(2)(b), granting the United States' Motion to Intervene for Purposes of Settlement and Motion to Dismiss, the Parties will promptly execute the Settlement Agreement and file a Joint Stipulation of Dismissal in accordance with paragraph 7 below.[2]  Putnam Community Medical Center of North Florida, LLC, shall pay to the United States One Million dollars ($1,000,000.00) ("Settlement Amount"), no later than ten (10) business days after the Court enters an order approving this Settlement Agreement and dismissing Case No. 3:19-cv-834-J-32JRK under Fed. R. Civ. P. 41(a)(1), 31 U.S.C. § 3730(c)(2)(A) and (B), and Fla. Stat. §§ 68.084(2)(a) and (2)(b); by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Middle District of Florida. The United States shall distribute the Settlement Amount as follows:

a. The United States will receive $955,051.00.

b. The State of Florida will receive $31,576.00.

c.  DHA will receive $13,373.00.

---

[2] The State of Florida will promptly recommend and initiate the process of settlement execution.

2.      Conditioned upon the United States, DHA, and the State of Florida receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay Relator by electronic funds transfer 25% of the payment ("Relator's Share").

3.      Defendant acknowledges that Relator and his attorney are entitled to reasonable expense that the Court finds to have been necessarily incurred, plus reasonable attorney's fees and costs under 31 U.S.C. § 3730(d); provided, however, Defendant expressly reserves the right to challenge the amounts, the necessity, and all aspects of the reasonableness of Relator's claims for attorney's fees, expenses and costs. Defendant agrees to pay such reasonable expenses and attorneys' fees and costs at such a time as they are determined to be payable by the Court, or as otherwise agreed by Relator and Defendant.

4.      Subject to the exceptions in Paragraph 8 (concerning reserved claims) below, and upon the United States' receipt of  the Settlement Amount, the United States releases Putnam Community Medical Center of North Florida, LLC and Putnam Community Medical Center, LLC, including their current and former corporate owners, their parent corporations (e.g., HCA Healthcare, Inc. ("HCA") and LH2), current and former corporate affiliates (e.g., Parallon Business Solutions, LLC ("Parrallon"), and the corporate successors and assigns from any civil or administrative monetary claim that the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5.      Subject to the exceptions in Paragraph 9 below (concerning reserved claims), and upon the State of Florida's receipt of the Settlement Amount, the State of Florida releases Putnam Community Medical Center of North Florida, LLC and Putnam Community Medical Center, LLC, including their current and former corporate owners, their

parent corporations (*e.g.*, HCA and LH2), and all current or former corporate affiliates (*e.g.*, Parallon), and their corporate successors and assigns from any civil or administrative monetary claim the State of Florida has for any claims submitted or caused to be submitted to the State of Florida's Medicaid Program or its contracted Managed Care Organizations as a result of the Covered Conduct. Nothing in this Agreement precludes the State of Florida from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 9, below.

6.      In consideration of the obligations of Putnam Community Medical Center of North Florida, LLC set forth in this Agreement, and upon the United States' receipt of full payment of the Settlement Amount, DHA shall release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the TRICARE Program against Putnam Community Medical Center of North Florida, LLC under 32 C.F.R. § 199.9 for the Covered Conduct, except as reserved in this paragraph and in Paragraph 10 (concerning reserved claims), below. Nothing in this paragraph precludes DHA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 8, below.

*7.*      Upon execution of the Settlement Agreement, the Parties shall promptly sign and file in the Civil Action a joint stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1), the Federal False Claims Act, 31 U.S.C. §§ 3730(c)(2)(A) and (B), and the Florida False Claims Act, Fla. Stat. §§ 68.084(2)(a) and (2)(b). The joint stipulation of dismissal shall make clear that (i) the Covered Conduct shall be dismissed with prejudice as to the United States, the State of Florida, and Relator, and (ii) the Parties agree to dismiss all remaining parts of this action, including, but not limited to, the downstream claims, the claims relating to diagnostic tests performed in other departments of the Hospital (e.g., electrocardiograms and

5

pulmonary function tests), and claims submitted outside the scope of Relator's employment (*e.g.*, January 2009 to November 2013 and March 2019 to present) without prejudice as to the United States and the State of Florida, on the one hand, and with prejudice as to Relator, on the other hand.  The stipulation of dismissal shall specify that the United States District Court for the Middle District of Florida retains jurisdiction to resolve any issues regarding whether the settlement is fair, adequate, and reasonable and as to the payment of reasonable attorney's fees and costs pursuant to 31 U.S.C. § 3730(d).

8.      Notwithstanding the releases given in Paragraph 4 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Any liability of individuals;

g.      Any liability for failure to deliver goods or services due;

h.      Any liability for a fraudulent transfer or conveyance; and

i.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

9.      Notwithstanding the releases given in Paragraph 5 of this Agreement, or any other term of this Agreement, the following claims and rights of the State of Florida are specifically reserved and are not released:

a.      Any criminal, civil, or administrative liability arising under state revenue codes;

b.      Any criminal liability;

c.      Any civil administrative liability that any person or entity, including Putnam Community Medical Center of North Florida, LLC, have or may have to Florida or to the individual consumers or state program payors under any statute, regulation, or rule not expressly covered by the release in paragraph 4 above, including by not limited to, any and all of the following claims: (i) State of Florida or federal antitrust violations and (ii) claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws;

d.      Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Florida's Medicaid program;

e.      Any liability to the State of Florida (or its agencies) for any conduct other than the Covered Conduct;

f.      Any liability based upon obligations created by this Agreement;

g.      Any liability of individuals;

h.      Any liability for express or implied warranty claims or other claims for defective or deficient products and services, including quality of goods and services;

i. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

j. Any liability for failure to deliver goods or services due.

10.    Putnam Community Medical Center of North Florida, LLC, waives and shall not assert any defenses Putnam Community Medical Center of North Florida, LLC may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

11.    Putnam Community Medical Center of North Florida, LLC fully and finally releases the United States, DHA, the State of Florida, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Putnam Community Medical Center of North Florida, LLC has asserted, could have asserted, or may assert in the future against the United States, the State of Florida, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' and the State of Florida's investigation or prosecution thereof.

12.    The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), or any state payer (including but not limited to the State of Florida's Medicaid program, or any other Florida program payor), related to the Covered Conduct; and Putnam Community Medical Center of North Florida, LLC agrees not to resubmit to any Medicare, Medicaid or TRICARE contractor, or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

13.     Putnam Community Medical Center of North Florida, LLC agrees to the following:

a.     <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Putnam Community Medical Center of North Florida, LLC, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)     Putnam Community Medical Center of North Florida, LLC's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)     the negotiation and performance of this Agreement; and

(5)     the payment Putnam Community Medical Center of North Florida, LLC makes to the United States and the State of Florida pursuant to this Agreement and any payments that Putnam Community Medical Center of North Florida, LLC may make to Relator, including costs and attorneys' fees.

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program ("FEHBP") (hereinafter referred to as "Unallowable Costs").

b.      Future Treatment of Unallowable Costs:  Unallowable Costs shall be separately determined and accounted for by Putnam Community Medical Center of North Florida, LLC, and Putnam Community Medical Center of North Florida, LLC shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Putnam Community Medical Center of North Florida, LLC or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.      Treatment of Unallowable Costs Previously Submitted for Payment: Putnam Community Medical Center of North Florida, LLC further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Putnam Community Medical Center of North Florida, LLC or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Putnam Community Medical Center of North Florida, LLC agrees that the United States and the State of Florida, at a minimum, shall be entitled to recoup from Putnam Community Medical Center of North Florida, LLC any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States and the State of Florida reserve their rights to disagree with any calculations submitted by Putnam Community Medical Center of North Florida, LLC or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Putnam Community Medical Center of North Florida, LLC or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States or State of Florida to audit, examine, or re-examine books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

14.     This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 15 (waiver for beneficiaries paragraph), below.

15.     Putnam Community Medical Center of North Florida, LLC agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16.     Except as set forth in paragraph 3 above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17.     Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

18.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Florida. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

20.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22.     This Agreement is binding on Putnam Community Medical Center of North Florida**,** LLC's  successors, transferees, heirs, and assigns.

23.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

24.     All Parties consent to the United States' and State of Florida's disclosure of this Agreement, and information about this Agreement, to the public.

25.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: _____     BY: _____
                           KELLEY C. HOWARD-ALLEN
                           Assistant United States Attorney
                           Middle District of Florida

**<u>STATE OF FLORIDA</u>**


DATED: _____        BY: _____

                                           JOHN GUARD
                                           Chief Deputy Attorney General for the
                                           State of Florida

## <u>DEFENSE HEALTH AGENCY</u>

DATED: _____          BY: _____

                                 SALVATORE M. MAIDA
                                 General Counsel
                                 Defense Health Agency
                                 United States Department of Defense

## PUTNAM COMMUNITY MEDICAL CENTER OF NORTH FLORIDA, LLC


DATED: _____        BY:   _____
                                Brian Nunn
                                Chief Executive Officer
                                Putnam Community Medical
                                Center of North Florida, LLC


DATED: _____        BY:   _____
                                Martin Goldberg, Esq.
                                Daryl L. Saylor, Esq.
                                Counsel for Putnam Community
                                Medical Center of North Florida, LLC

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,
THE STATE OF FLORIDA,
*Ex rel.* WILLARD REVELS,                   CASE NO. 3:19-cv-834-J-32JRK

        Plaintiffs/Relators,

v.

PUTNAM COMMUNITY MEDICAL
CENTER OF NORTH FLORIDA, LLC,

        Defendant.

_____/

<u>**JOINT STIPULATION OF DISMISSAL**</u>

Pursuant to Federal Rule of Civil Procedure 41(a)(1), the provisions of the

Federal False Claims Act, 31 U.S.C. §§ 3730(c)(2)(A) and (B), and the provisions of

the Florida False Claims Act, Fla. Stat. §§ 68.084(2)(a) and (2)(b), the United States

of America ("United States"), the State of Florida, and Defendant Putnam

Community Medical Center of North Florida, LLC (together, the "Parties"),

through their respective undersigned counsel, hereby stipulate to the dismissal of this

action as follows:

    1.      Upon the Court's finding that the settlement agreement

("Settlement Agreement") is "fair, adequate and reasonable" under 31 U.S.C.

§ 3730(c)(2)(B) and Fla. Stat. § 68.084(2)(b), the Parties will promptly execute[1] the Settlement Agreement attached as Exhibit A, in which they agree to dismiss the "Covered Conduct" released in the Settlement Agreement with prejudice as to the United States, the State of Florida, and Relator Willard Revels ("Relator").

2.      Subject to the Court granting the United States' Motion to Intervene for Purposes of Settlement and Motion to Dismiss under 31 U.S.C. § 3730(c)(2)(A) and (B) and Fla. Stat. § 68.084(2)(a) and (b), the Parties agree to dismiss all remaining parts of this action, including any unreleased claims, without prejudice as to the United States and State of Florida, and with prejudice as to Relator.

3.      Accordingly, this action will be dismissed in its entirety and with prejudice as to Relator, and request that the Court enter an order of dismissal pursuant to Rule 41(a)(1), 31 U.S.C. §§ 3730(c)(2)(A) and (B), and Fla. Stat. §§ 68.084(2)(a) and (b): (i) dismissing Relator's Second Amended Complaint [ECF Nos. 69-70] in its entirety and with prejudice as to Relator; (ii) dismissing the Covered Conduct in the Second Amended Complaint  [ECF Nos. 69-70] (as described in the Settlement Agreement) with prejudice as to the United States and the State of Florida; and (iii) dismissing all other unreleased claims without prejudice as to the United States and the State of Florida.

---

[1] The State of Florida will promptly recommend and initiate the process of settlement execution.

2

4.      The Parties further request that the Court retain jurisdiction to enforce

the terms, conditions, and releases of the Settlement Agreement, to the extent

reasonably necessary and appropriate.


Respectfully submitted:

**ROGER B. HANDBERG**                           **ASHLEY MOODY**
United States Attorney                          Attorney General of the State of Florida


_____                         _____

**KELLEY C. HOWARD-ALLEN**                      **REBECCA H. SIRKLE**
Assistant United States Attorney                Senior Assistant Attorney General
Florida Bar No.: 0085464                        Florida Bar No: 0042312
Office of the United States Attorney            Office of the Attorney General
For the Middle District of Florida              Medicaid Fraud Control Unit
400 N. Tampa St., Suite 3200                    135 W. Central Blvd., Suite 1000
Tampa, FL 33602                                 Orlando, Florida 32801
Tel: (813) 274 6000                             Tel: (407) 241-5353
Fax: (813) 274 6200                             Facsimile: ( 407) 245-0368
Email: Kelley.Howard@usdoj.gov                  Rebecca.Sirkle@myfloridalegal.com


**LASH GOLDBERG LLP**
Suite 1200, Miami Tower
100 Southeast Second Street
Miami, Florida 33131-2100
(305) 347-4040/Fax: (305) 347-4050
*Counsel for Defendant Putnam Community*
*Medical Center of North Florida, LLC*


_____

**MARTIN B. GOLDBERG**
Florida Bar No. 0827029
mgoldberg@lashgoldberg.com
**DARYL L. SAYLOR**
Florida Bar No. 100376
dsaylor@lashgoldberg.com

3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June ___, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send electronic notification to all counsel of record.

By: <u>*/s/Kelley C. Howard-Allen*</u>
     **KELLEY C. HOWARD-ALLEN**
     Assistant United States Attorney